**Hazel QUAM, Appellant,**

v.

**GENERAL ACCIDENT INSURANCE COMPANY OF NORTH AMERICA, Respondent.**

**No. C2-86-2118.**

Court of Appeals of Minnesota.

Sept. 1, 1987.

Thomas Laughlin, Nilva and Frisch, P.A., St. Paul, for appellant.

Jon A. Hanson, Tony R. Krall, Hanson, Noel & Lulic, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from an order denying a motion for a new trial. The jury found appellant Hazel Quam, the insured, had increased the hazard of fire occurring on the premises and had "participate[d] in, arrange[d] for" or aided the setting of the fire. We affirm.

## FACTS

Appellant Hazel Quam was the owner of a duplex at 2728 Bloomington Avenue, as well as several other rental properties. The property was destroyed by fire on September 10, 1983, one day after the house had been condemned by the Minneapolis Health Department for unsanitary living conditions in the first floor apartment. The two-story house was insured for fire loss with respondent General Accident Insurance (GAI) for $65,000. GAI denied Quam's claim for this amount, on grounds of arson by the insured and increase of hazard by the insured. It is undisputed the fire was deliberately set, with the use of gasoline as an accelerant.

GAI stipulated that Quam owned the property, was insured under the policy for the loss, and that the loss exceeded the policy limits. The only issues at trial were whether Quam arranged for the burning of the house and whether the conditions lead-ing to the condemnation increased the hazard of loss by fire.

Quam had sold all the rental properties after the death of her husband. The properties were repossessed in late 1982 after the contract for deed vendee failed to make payments. Quam testified she then decided to clean and fix up the properties and keep them to provide her monthly income.

Quam inherited the existing tenants and experienced no problems until April of 1983 when the first floor tenants began denying her entrance.

On July 30, 1983, the first floor tenants were served with an eviction notice giving them 30 days to vacate. Quam testified it was because of complaints from neighbors about odors, denial of access, and the keeping of animals in the apartment.

On September 9, 1983, the house was visited by the dogcatcher, a health department inspector, and the city police, apparently as a result of neighbors' complaints. There was a couch in the front yard that had been partially burned and a large hole in the plywood-covered door. There was a distinct, very strong odor which the policeman testified he could smell from the street. The policeman was infected with fleas or lice as soon as he entered the house.

The health inspector testified that when he arrived on September 9, there was food decaying, garbage accumulating, feces on the floor, and fleas present. On the second floor there were "electrical problems," plaster knocked out of the walls, and broken windows. He stated, however, that the second floor damage appeared very recent and that the condemnation would have been lifted if the first floor was cleaned up.

Quam had given the first floor tenants an extension on the eviction notice because one occupant was ill and bedridden, and they could not obtain transportation for the move.

Following the condemnation notice, Quam changed the locks on the doors. Quam went to the store to buy a flea repellent which she gave to her son to use

in the house. No efforts were made that day or the next to clean up the apartment.

The fire occurred at about 10:30 p.m. on the evening following the condemnation notice. Two five-gallon gasoline cans were found in the home, and it was undisputed the fire was set by that means. GAI's expert witness, an arson investigator and consultant, testified the holes in the second floor plaster walls aided the spread of the fire.

Quam had increased the coverage on her fire insurance policy from $45,000 to $65,-000 on August 10, 1983. She reported net income on the property of about $69 per month for 1983. She spent over $8,000 in 1983 for repairs on the other two properties covered by the policy, but had spent only $937 on the building that was destroyed.

### ISSUES

1. Did the trial court commit reversible error in instructing the jury on the burden of proof?

2. Did the trial court err in instructing the jury that the "increase of hazard" by the insured need not cause the actual loss?

### ANALYSIS

1. *Burden of proof*

The trial court submitted the arson and "increase of hazard" issues to the jury by special verdict. The court itself answered the first question, finding the fire was of incendiary origin.

The court gave the following instruction on the burden of proof:

*Now, in a general way, in any lawsuit, the Plaintiff has the burden of proving his or her case, and that's true in this case.* However, because you're going to be asked to answer a couple of questions to which your answers will constitute the verdict in this case, I instruct you that you are to keep the following instruction in your mind and be guided by it with reference to what the burden of proof requires in this case. *In order to answer either of the questions put to you with a yes, the greater weight of the evidence, or a fair preponderance of it, as we say, must support that answer, otherwise, you should answer the question no.*

(Emphasis added.)

Quam objected to the first sentence of this instruction, contending she had met her burden of proof by the stipulations submitted, leaving only the affirmative defenses claimed by GAI. She contends the reference to a plaintiff's burden of proof was inapplicable to this case and prejudicial to her, because the jury may have inferred she bore the burden of disproving GAI's affirmative defenses.

There is no doubt the first sentence of the instruction was erroneous. Not only had Quam proved her case by stipulation, but the issues were submitted by special verdict. *See* 4 Minnesota Practice CIV.JIG II, 71 (1986) (recommending no instruction on plaintiff's burden in a case submitted by special verdict). On a special verdict, as the trial court properly instructed, the burden of persuasion is expressed in terms of the questions asked, rather than the parties.

Although it is error to include in the instructions abstract statements of law which have no application to the facts, there is no reversible error unless the instruction tends to mislead or confuse the jury. *Hardy v. Anderson*, 241 Minn. 478, 483, 63 N.W.2d 814, 818 (1954) (footnote omitted). If the instructions, when considered as a whole, convey to the jury the correct statement of the law, they will not be overturned on appeal. *Shastid v. Shue*, 247 Minn. 314, 325–26, 77 N.W.2d 273, 281 (1956). The latter part of the instruction in this case did specifically state the correct burden of proof. We therefore conclude that this error is not reversible.

Moreover, both counsel for Quam and counsel for GAI agreed during closing arguments that GAI carried the burden of proof. Counsel for GAI argued as follows:

In a civil case, there is a different burden, and the lawyers generally refer to it as a tipping of the scales. If the evidence tips, if the burden is tipped in

favor of one party, the party with the burden, it's your duty to find for that party. It's just a slight tipping, but the evidence must tip in favor of one party or the other.

It's in favor of the party that has the burden of proof, and in this case, the— *my client, General Accident, has the burden of proof,* and it's a burden that I gladly accept because I believe the evidence supports the position that General Accident has taken in this case.

(Emphasis added.)

Any claimed damage to Quam's lawyer's credibility was offset, as counsel for GAI made the same argument. Furthermore, there is simply nothing in the record to suggest that any alleged damage to credibility in any way affected the jury's verdict.

### 2. *Causation*

■ The court instructed the jury that the insured's "increase of hazard" may defeat recovery although the increased hazard did not cause the actual loss. Since the fire was of incendiary origin, the conditions in the building did not cause the loss. However, Quam's argument that causation is required is without merit.

Our supreme court has stated that "[w]here the risk is in fact increased, it is immaterial that the loss was not caused by it." *Taylor v. Security Mutual Fire Insurance Co.,* 88 Minn. 231, 235, 92 N.W. 952, 954 (1903); *see also* Note, *The Increase of Hazard Clause in The Standard Fire Insurance Policy,* 76 Harv.L.Rev. 1472, 1474 (1963), *quoted in Hawkeye Chemical Co. v. St. Paul Fire & Marine Insurance Co.,* 510 F.2d 322, 328 (7th Cir.) (Pell, J., dissenting), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975).

### DECISION

The trial court properly denied appellant's motion for a new trial.

Affirmed.